UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATASHA SARDEN, | Case No. C05-00343-TSZ-JPD |
| Petitioner, | |
| v. | |
| UNITED STATES OF AMERICA, | REPORT AND RECOMMENDATION |
| Respondent. | |

**INTRODUCTION AND SUMMARY CONCLUSION**

Petitioner is a federal prisoner who has filed a motion under 28 U.S.C. § 2255 that seeks to vacate, set aside, or correct her 2003 federal court sentence. Respondent has filed a response opposing petitioner's motion. Following a careful review of the parties' pleadings and the record, this Court concludes that petitioner's § 2255 motion should be denied.

**FACTS**

On March 3, 2003, petitioner pleaded guilty to one count each of bank fraud and impeding a federal officer. Case No. 03-CR00103, Dkt. No. 11. Specifically, she admitted that she had fraudulently attempted to cash a check that was not made out to her and had then resisted arrest by the federal agent that apprehended her. Dkt. Nos. 15, 16, 17, 21. On June 20, 2003, the Honorable

REPORT AND RECOMMENDATION
PAGE - 1

1  Thomas S. Zilly sentenced petitioner to pay $51,525.95 in restitution and to serve thirty months in
2  prison, followed by five years of supervisory release. Dkt. Nos. 34, 36.
3      At sentencing, petitioner was advised of her right to appeal. Dkt. No. 36. Petitioner did not
4  file a direct appeal. Instead, she seeks relief from her sentence by filing this § 2255 motion.

5  **CLAIMS FOR RELIEF**

6      Petitioner's motion relies upon *Blakely v. Washington*, 124 S. Ct. 2531 (2004), to argue that
7  her sentence violates the Fourth, Fifth, and Sixth Amendments to the United States Constitution. Case
8  No. 05-00343, Dkt. No. 1. She argues that *Blakely* should apply retroactively to her motion. Dkt.
9  No. 1. Further, petitioner argues that she did not waive this argument by failing to raise it at
10 sentencing because doing so would have been futile in light of the fact that *Blakely* had not yet
11 decided. Dkt. No. 1. Because *U.S. v. Booker*, 125 S. Ct. 738 (2005), applies *Blakely* specifically to
12 the Federal Sentencing Guidelines, the Court construes her argument to assert that *Booker* is
13 retroactively applicable for purposes of her motion.

14     In response, respondent argues that the petition is not timely. Dkt. No. 6. It also argues that
15 *Blakely* does not apply to the United States Sentencing Guidelines and that *Booker* does not apply
16 retroactively to cases on collateral review. Dkt. No. 6. Respondent further argues that petitioner
17 procedurally defaulted by failing to raise this claim at the district court prior to sentencing or on direct
18 appeal. Dkt. No. 6.

19 **DISCUSSION**

20     This Report and Recommendation analyzes whether petitioner's motion is time-barred under
21 the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996.

22     A.   <u>Plaintiff's Motion is Time-Barred Under 28 U.S.C. § 2255 ¶ 6(1).</u>

23     The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year
24 statute of limitations for petitioners who file 28 U.S.C. § 2255 motions challenging their federal court

25
   REPORT AND RECOMMENDATION
26 PAGE - 2

sentences. Pub. L. No. 104-132, § 105 , 110 Stat. 1214 (1996) (codified in part at 28 U.S.C. § 2255 (1996). It provides, in relevant part, that

> [a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1)    the date on which the judgment of conviction became final; [or]
>
> . . . .
>
> (3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

28 U.S.C. § 2255 ¶ 6.

A conviction typically becomes final for purposes of federal habeas review when the Supreme Court denies the petition for certiorari, or the time for filing such a petition has elapsed. *United States v. Garcia*, 210 F.3d 1058, 1059-60 (9th Cir. 2000) (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)). A defendant's conviction also becomes final when the time for appealing his sentence has passed. *See United States v. Calvin*, 204 F.3d 1221, 1224-25 (9th Cir. 2000).

Here, the district court issued its final judgment on June 20, 2003. Case No. 03-CR00103, Dkt. Nos. 34, 36. Petitioner had ten days by which to file an appeal, but failed to do so. *See* Fed. R. App. P. 4(b)(1)(A). Her sentence therefore became final on or around July 1, 2003. She filed the motion presently before the Court on March 1, 2005, nineteen months after her conviction became final. Dkt. No. 1. Hence, her motion is time barred under the first prong of AEDPA's statute of limitations.

The question of whether petitioner's motion is time barred under 28 U.S.C. § 2255, however, requires analysis of whether *Booker* creates a new rule that applies retroactively on collateral review.

B.   <u>Plaintiff's Motion is Time-Barred Under the 28 U.S.C. § 2255 ¶ 6(3) Because *Booker* Does Not Apply Retroactively to Cases on Collateral Review</u>.

Generally, decisions that establish new rules of law are not applied retroactively to cases on

REPORT AND RECOMMENDATION
PAGE - 3

collateral review.[1] *Teague v. Lane*, 489 U.S. 288, 303, 310-311 (1989).[2]  There are, however, two exceptions to this rule.  To determine whether new rules should be retroactively applied, the Court must undertake a three step analysis.  First, it must determine when the defendant's conviction became final.  *Beard v. Banks*, 124 S. Ct. 2504, 2510 (2004).  Then, it must decide whether the rule in question is a "new" rule.  *Id.*  Finally, if the rule is new, the Court must determine whether it satisfies one of the two narrow exceptions to non-retroactivity.  *Id.*  If the rule is substantive it should be applied retroactively.  *Schriro v. Summerlin,* 124 S. Ct. 2519, 2522-23 and n.4 (2004).  Additionally, certain procedural rules may be applied retroactively it they constitute one of a very "small set of 'watershed rules of criminal procedure' [that implicate] the fundamental fairness and accuracy of the criminal proceeding."  *Id.* at 2523 (internal citations omitted).

Here, petitioner has failed to show that the rule announced in *Booker* should be applied retroactively to cases on collateral review.

### 1. Petitioner's Case Was Final Before *Booker* Was Issued

As discussed above, petitioner's conviction became final for purposes of habeas review on or around July 1, 2003.  *See supra*, § A.  Petitioner's conviction therefore became final well before the Supreme Court announced its decision in *Booker* on January 12, 2005.  Because petitioner's case became final prior to *Booker* for purposes of retroactivity analysis, the Court must determine whether *Booker* announced a "new" rule.

---

[1] Such rules, however, are generally applied to cases still pending on direct appeal.  *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); *see also U.S. v. Ameline*, 409 F.3d 1073 (2005) (en banc) (requiring limited remand for cases raising *Booker* claims on direct review).

[2] Although *Teague* was a four justice plurality opinion, it is now "accorded the full precedential weight of a majority opinion."  *Jones v. Smith,* 231 F.3d 1227, 1236 n.5 (9th Cir. 2000) (internal citations omitted).

REPORT AND RECOMMENDATION
PAGE - 4

2.      *Booker* Announced a New Rule

A court announces a new rule for purposes of retroactivity when it "breaks new ground or imposes a new obligation on the States or Federal Government." *Teague*, 489 U.S. at 301 (internal citations omitted).  Stated differently, a rule is new if its result "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id*. (emphasis in original); *accord Bockting v. Bayer*, 399 F.3d 1010, 1014-15 (9th Cir. 2005).  To be new, the unlawfulness of the conviction in question must have been "apparent to all reasonable jurists." *Beard*, 124 S. Ct. at 2511 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997).

Here, *Booker* must be said to have announced a new rule for purposes of retroactivity analysis.  In *Booker*, the Court noted that it "must apply today's holdings . . . to all cases on direct review." *Booker*, 125 S. Ct. at 769 (internal citations omitted).  Such language would have been superfluous were the rule dictated by precedent.  Moreover, as the Sixth Circuit noted in *Humphress v. United States*, 398 F.3d 855, 861-862 (6th Cir. 2005) (collecting cases), the federal judiciary was deeply divided over the effect of *Blakely* on the Guidelines.  The fact that four Supreme Court justices dissented in *Booker* lends further support to this argument.  With such widespread disagreement by "reasonable jurists" throughout the judiciary as to the effect of *Blakely*, it can hardly be said that the rule in *Booker* was "dictated" by then-existing case law before it was announced.  *Booker* thus constitutes a "new rule" for purposes of retroactivity analysis.

3.      *Booker* Announced a Procedural Rule.

Substantive rules are defined as those that "narrow the scope of a criminal statute by interpreting its terms [or that make] . . . constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Summerlin*, 124 S. Ct. at 2522 (citing *Bousley v. United States,* 523 U.S. 614, 620-21 (1998); *Saffle v. Parks*, 494 U.S. 484, 494-95 (1990); *Teague*, 489 U.S. at 311)); *see also Bockting*, 399 F.3d at 1016.  Substantive rules can also be

REPORT AND RECOMMENDATION
PAGE - 5

1  said to "alter[ ] the range of conduct or the class or persons that the law punishes." *Summerlin*, 124
2  S. Ct. at 2523. They also modify the elements of a crime. *Id.* at 2524. Substantive rules apply
3  retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an
4  act that the law does not make criminal or faces a punishment that the law cannot impose upon him."
5  *Id.* at 2522-23 (internal citations and quotations omitted).

6        Conversely, rules that "regulate only the *manner of determining* the defendant's culpability are
7  procedural." *Id.* at 2523 (emphasis in original). According to the Supreme Court, rules that allocate
8  decision making authority between judge and jury for purposes of the Sixth Amendment are
9  "prototypical procedural rules." *Id.* Unlike their substantive counterparts, new procedural rules are
10  generally not applied retroactively because they "merely raise the possibility" that someone convicted
11  of a crime might have otherwise been acquitted. *Id.* at 2523.

12        *Summerlin* makes clear that *Booker*, which impacts the allocation of decisionmaking authority
13  for Sixth Amendment purposes, is a procedural rule. *Summerlin* addressed the question of whether
14  *Ring v. Arizona*, 536 U.S. 584 (2002), should be applied retroactively to cases on collateral review,
15  and concluded that it should not. In *Ring*, the Supreme Court held that an Arizona sentencing scheme
16  that enabled a judge — not a jury — to determine sentencing factors for capital cases by a
17  preponderance of the evidence violated the Sixth Amendment. *Ring*, 536 U.S. at 609. Because *Ring*
18  only addressed the constitutionality of the law in the context of a direct appeal, its application to a
19  collateral habeas corpus attack remained to be determined.

20        To determine whether *Ring* should apply retroactively, *Summerlin* applied *Teague's*
21  retroactivity analysis and concluded that the holding was procedural in nature. Specifically, the Court
22  found that *Ring's* requirement that juries determine certain capital sentencing factors did not "alter the
23  range of conduct Arizona law subjected to the death penalty." *Summerlin*, 124 S. Ct. at 2523. In fact,
24  the Court reasoned that it was impossible for it to have done so because the decision "rested entirely

REPORT AND RECOMMENDATION
PAGE - 6

on the Sixth Amendment's jury trial guarantee, *a provision that has nothing to do with the range of conduct a State may criminalize.*" *Id*. (emphasis added).  Instead, *Ring* merely affected the "range of permissible methods for determining whether a defendant's conduct is punishable[.]" *Id*.  The Court then concluded that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules[.]" *Id*.

The Ninth Circuit's analysis of whether *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies retroactively supports the conclusion that *Booker* announced a procedural rule as well.  *Apprendi* held that "[o]ther than the fact of conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  Applying *Teague*, the Ninth Circuit has held that *Apprendi* was a new rule of criminal procedure and that it was not retroactively applicable to cases on collateral review.  *United States v. Sanchez-Cervantes*, 282 F.3d 664, 668-71 (9th Cir. 2002); *Jones v. Smith*, 231 F.3d 1227, 1236 (9th Cir. 2001).  Since then, the court has also held that *Apprendi*, as extended in *Blakely*, does not apply retroactively to cases on collateral review, and that neither *Summerlin* nor *Blakely* undermines this non-retroactivity holding.  *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246 (9th Cir. 2005).  The Ninth Circuit has also held that the Supreme Court "has not made *Blakely* retroactive to cases on collateral review." *Cook v. United States*, 386 F.3d 949 (9th Cir. 2004) (in the context of a second or successive § 2255 motion).  Thus, both the Supreme Court and Ninth Circuit have held that *Apprendi, Blakely* and related Sixth Amendment cases do not announce substantive rules because they relate to the allocation of decisionmaking during sentencing and not to the substantive nature of any underlying crime.

There is no meaningful distinction between the type of constitutional rule held not to apply retroactively in *Summerlin*, *Sanchez-Cervantes*, and *Cook*, and the type of constitutional rule announced in *Booker.*  Like those cases, *Booker* is based upon the Sixth Amendment's requirement

1  that certain sentencing factors be proven to a jury rather than to a judge.  Indeed, like *Ring* and

2  *Blakely*, *Booker* rests largely upon the holding in *Apprendi* that the Sixth Amendment requires that

3  "[o]ther than the fact of conviction, any fact that increases the penalty for a crime beyond the

4  prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."

5  *Apprendi*, 530 U.S. at 490.  Like those cases, *Booker* has nothing to do with the range of conduct that

6  the State can criminalize nor the elements of any underlying criminal statute.  Rather, *Booker* deals

7  with the allocation of decisionmaking authority between judge and jury.  Hence, like the decisions

8  discussed above, the decision in *Booker* is a "prototypical procedural rule[]" that should not be applied

9  retroactively to cases on collateral review.

10       For the reasons stated above, the new rule announced in *Booker* is procedural in nature.  The

11  Court must therefore determine whether the rule fits into the narrow exception to the general rule

12  against retroactive application of new procedural rules on collateral review.

13            4.    <u>*Booker* Does Not Fit Within the Narrow Exception for "Watershed" Rules</u>.

14       Because procedural rules have a more attenuated link to the accuracy of a criminal conviction,

15  only a limited number of "watershed rules of criminal procedure" that implicate the fundamental

16  fairness and accuracy of the underlying criminal proceeding will be applied retroactively.  *Summerlin*,

17  124 S. Ct. at 2523 (internal citations omitted); *Bockting*, 399 F.3d at 1016-17.  To apply retroactively,

18  a rule may not just be "fundamental" in an abstract sense, but instead must "alter our understanding of

19  the *bedrock procedural elements* [essential to] . . . the fairness of a particular conviction."  *Teague*,

20  489 U.S. at 311 (internal citations omitted; emphasis in *Teague*); *Summerlin,* 124 S. Ct. at 2523.

21       This class of procedural rules is so narrow that the Supreme Court indicated in 2004 that it is

22  "unlikely" that one has yet to emerge.  *Summerlin*, 124 S. Ct. at 2523.  In *Beard*, when explaining

23  what types of procedural rules might constitute a watershed rule, the Supreme Court has referred to

24  the right to counsel announced in *Gideon v. Wainright*, 372 U.S. 335 (1963).  *Beard*, 124 S. Ct. at

25

26  REPORT AND RECOMMENDATION
PAGE - 8

2514 (internal citations omitted).  The Ninth Circuit has held that the right to cross-examine witnesses who make certain hearsay statements, guaranteed by the Confrontation Clause, "joins the very limited company of *Gideon*."  *Bockting*, 399 F.3d at 1019.  In making this determination, the Ninth Circuit noted that the Supreme Court has described the right of confrontation as a "bedrock procedural guarantee" that "dates back to Roman times" and that its importance was recognized by the founding generation.  *Bockting*, 399 F.3d at 1020 (quoting *Crawford v. Washington*, 541 U.S. 36 (2004).  These limited cases underscore the extremely narrow scope of the "watershed" exception, and demonstrate that its application is reserved for only a very limited number of truly fundamental procedural rules.

Conversely, the Supreme Court has held that cases that affect the manner in which sentencing enhancements are determined do not constitute watershed rules that implicate the fundamental fairness of a conviction.  *See e.g.*, *Summerlin*, 124 S. Ct. at 2526.  The Ninth Circuit has acknowledged this distinction as well.  *Bockting*, 399 F.3d at 1016.  In *Bockting*, the Ninth Circuit explicitly juxtaposed *Summerlin* and *Crawford* to demonstrate why only the latter constituted a procedural rule of watershed magnitude.  *Id.*  Specifically, the court explained that *Crawford*'s rule was "unequivocal[ly]" recognized as one that "seriously decreases the possibility of inaccurate conviction," whereas it was decidedly unclear whether the same was true of the rule in *Summerlin*.  *Id.* at 1016-17.

Given controlling authority in this Circuit, current precedent and the extremely narrow range of procedural rules that can be applied retroactively, *Booker* cannot be said to constitute a watershed rule.  Petitioner has not articulated how *Booker* differs from *Blakely*, nor identified any change in controlling authority that supports his argument for retroactive application.

The district courts in the Ninth Circuit have so far reached similar conclusions.  *See, e.g.,* *United States v. Lopez-Cerda*, 2005 WL 1056658 (E.D. Wash. 2005); *Fain v. United States,* 2005 WL 1111235 (W.D.Wash. 2005); *U.S. v. Melton*, 2005 WL 1213666 (D. Alaska 2005) (Report and

REPORT AND RECOMMENDATION
PAGE - 9

1  Recommendation); *U.S. v. Brown*, 2005 WL 1259889 (D. Alaska 2005) (Report and
2  Recommendation); *but see United States v. Siegelbaum,* 359 F. Supp.2d 1104, 1108 (D. Or. 2005)
3  (rejecting petitioner's § 2255 motion but recognizing that *Booker* and *Blakely* could be found to apply
4  retroactively). Moreover, to the Court's knowledge, every Circuit Court to have considered whether
5  *Booker* applies retroactively to cases on collateral review has determined that it does not. *See, e.g.,*
6  *United States v. Green*, 2005 WL 237204 (2d Cir. 2005); *Humphress*, 389 F.3d at 860; *McReynolds*
7  *v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *United States v. Leonard*, 2005 WL 139183 (10th
8  Cir. 2005). Until the Ninth Circuit determines otherwise, *Booker*, like *Apprendi* and *Blakely* before it,
9  must not be applied retroactively to cases on collateral review. As a result, petitioner's motion is time
10 barred by 28 U.S.C. § 2255 ¶ 6(3)

**CONCLUSION**

Because this Court concludes petitioner's 28 U.S.C. § 2255 motion is time barred, her petition must be denied. A proposed order accompanies this Report and Recommendation.

DATED this 1st day of July, 2005.

/s/ James P. Donohue
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 10